UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

I. STEPHEN RABIN,

                                                                        06 Civ. 775 (LTS)(KNF)

                Plaintiff,

                v.

MONY LIFE INSURANCE COMPANY,

                Defendant.

---

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

### OPINION AND ORDER

        Plaintiff I. Stephen Rabin ("Plaintiff") brings this putative class action against MONY Life Insurance Company ("MONY" or "Defendant") asserting claims for: (1) breach of contract; (2) breach of fiduciary duty; (3) unjust enrichment; and (4) deceptive practices under New York General Business Law ("GBL") § 349.[1]  Plaintiff's claims arise from MONY's practice of making certain policy surrender disbursements by placing the funds in a "MONY Market" checking account in the former policyholder's name.  Plaintiff seeks damages measured by the difference between the interest rate paid and the rates allegedly available on similar investments, as well as injunctive relief and attorneys' fees.  The amended complaint adequately avers that this Court has jurisdiction of the instant claims pursuant to Section 1332(d) of the Judicial Code, 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005.

        Plaintiff has moved for class certification and Defendant has moved for summary

---

[1] The Court previously dismissed Plaintiff's claim for common law fraud and deceit. (Docket entry no. 30.)

judgment dismissing the complaint as a matter of law.  The Court has reviewed the parties' submissions thoroughly.  By Order dated October 21, 2009, the Court granted Defendant's summary judgment motion and declined to address the class certification motion.  This Opinion and Order explains the reason for those decisions.

BACKGROUND

The following material facts are undisputed unless otherwise indicated.[2]  Plaintiff purchased two life insurance policies from Defendant, Nos. 1056-71-75 and 1081-05-94, dated January 1, 1977, and January 1, 1979, respectively (the "Policies").  (Angst Decl., Exs. 17A, 17B.)  The Policies permitted Plaintiff to surrender them for their cash value and were silent as to the specific manner of payment.  (Id.)  During the course of Plaintiff's ownership of the Policies, Defendant adopted a procedure for disbursing surrender payments under which it provided the surrendering policyholder with a checkbook (the "Account Checkbook") for a "MONY Market Draft Account" (the "Account") that was credited with funds in the amount the surrendering policyholder was due.  The surrendering policyholder could immediately write himself a check for the full value of the Account or he could maintain some or all of the funds in the Account, which would carry a variable interest rate.  Defendant elected to establish such accounts rather than mail settlement checks to surrendering policyholders based on the finding of its Policyholder Service Committee that settlement checks were often not cashed for long periods of time or were misplaced.  (Def. 56.1 St. ¶¶ 2-3.)

In December 2004, Plaintiff elected to surrender the Policies by submitting a

---

[2]   Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("__ 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions.

"Surrender Request Form," which described the manner in which the disbursement would be made as follows:

> Proceeds are made available to you by means of an interest-bearing checking account. This account will be opened in your name, and you will receive a supply of checks with which you can immediately access all or a portion of the funds, by writing checks for $250 or more. The funds in the account earn interest at a competitive, variable rate.

(Id.) In January 2005, shortly after submitting the Surrender Request Form, Plaintiff received an Account Checkbook, a MONY Market Account Brochure (the "Brochure"), and a Confirmation Certificate. (Def. 56.1 St. ¶¶ 9-10.) The Brochure's first explanatory section, titled "Immediate Access," provided that Plaintiff could "write a single check for the entire balance in [his] account." (Def. 56.1 St. ¶ 21.) Plaintiff concedes that, when he received the Account Checkbook, he understood that he could write a check to himself for the entire balance of the Account immediately. (Def. 56.1 St. ¶ 32.)

The second explanatory section of the Brochure, titled "Competitive Interest Rates," provided,

> Interest is credited to your account on the last day of each month . . . The interest rate is a competitive rate and will always equal or exceed the national average for bank money market deposit accounts, as measured by the Bank Rate Monitor National Index . . . You may obtain the current rate at any time by calling our Toll-Free Number.

(Angst Decl., Ex. 17D.) The first page of the Confirmation Certificate contained a simple table with just four entries: Plaintiff's account number, his opening balance, the current interest rate (0.75%), and the annual percentage yield (also 0.75%). (Angst Decl., Ex. 17E.)

An additional explanatory section of the Brochure, titled "Guaranteed Safety," provided,

> The balance in your account and all your interest earnings are fully guaranteed by your MONY company, either MONY Life Insurance Company or its subsidiary MONY Life Insurance Company of America.

(Angst Decl., Ex. 17D.)  The Brochure did not represent that the Account was either insured by the Federal Deposit Insurance Corporation ("FDIC") or subject to the regulations designed to protect investors promulgated under the Investment Company Act of 1940.  (Id.)  The Brochure did not make any representation that Defendant would deploy any financial expertise to manage the Account for Plaintiff's benefit.  (Id.)

Defendant provides monthly statements to Account holders.  (Def. 56.1 St. ¶ 7.)  This monthly statement, which Plaintiff received at the end of January 2005 (the "January 2005 Monthly Statement"), identifies the interest rate currently being paid on the Account and the amount of interest accrued during the statement period.  (Id. ¶¶ 17-18.)  On February 11, 2005, Plaintiff wrote a check to himself for the full amount in his Account, thereby liquidating and closing the Account.  (Id. ¶ 22.)  Throughout the period that Plaintiff maintained funds in the Account, Defendant paid an interest rate that equaled or exceeded the national average for bank money market deposit accounts, as measured by the Bank Rate Monitor National Index ("BRMNI").  (Id. ¶ 13.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A

fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248).  The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

*Breach of Contract: the Manner of Payment*

To assert a breach of contract claim under New York law, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's adequate performance of the contract; (3) the defendant's breach of the contract; and (4) damages.  See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  Plaintiff alleges that Defendant breached its obligation to "pay" Plaintiff the surrender value of the Policies when, in lieu of mailing Plaintiff a check, it established the Account and provided Plaintiff with the Account Checkbook, Brochure, and Confirmation Certificate.  Plaintiff argues that this manner of disbursement does not constitute a "payment" as that term was reasonably understood by Plaintiff and therefore constitutes a breach despite the Policies' silence as to the manner of payment.  Plaintiff's claim fails because he has not proffered any evidence that would enable a reasonable fact finder to conclude that Defendant breached the contract.

The Policies did not specify any particular method of delivering policy payments.

Plaintiff has proffered no evidence indicative of any mutual agreement or understanding that delivery of a check was the only means by which MONY could settle payment on a policy. Furthermore, even if the Policies could reasonably have been construed to contemplate payments by check, Plaintiff has failed entirely to demonstrate that the Account method so materially deviated from any reasonable expectations associated with payment by check as to constitute a breach of contract. A payee who is sent a check must receive it, endorse it, and deliver it to a bank in order to take possession of the funds promised by the check. Similarly, a surrendering policyholder of a MONY life insurance policy who wishes to have possession of his funds immediately must receive the Account Checkbook, fill out a check to himself (which merely requires a few more lines of handwriting than endorsing a check), and deliver it to a bank in order to obtain the surrender value of the policy. The Court concludes that this <u>de minimis</u> distinction between Plaintiff's preferred manner of payment and the actual manner of payment does not support a claim for breach of a contractual obligation to make a payment, where the contract has not defined the manner of payment and the manner selected by the payor allows the payee ready access to funds owed to him through a process nearly indistinguishable from cashing a check.[3]

Plaintiff additionally argues that Defendant's manner of disbursing the surrender payment differs from the usual manner of payment in that a settlement check would draw on funds that were not commingled with Defendant's other accounts and would have been FDIC-insured, whereas the funds held in the Account were merely part of Defendant's corporate

---

[3] Plaintiff concedes that he knew that the moment he received the Account Checkbook he could have written himself a check for the entire balance of the Account and cashed or deposited it.

treasury and were exposed to MONY's credit risk. Plaintiff has not proffered any evidence to demonstrate either that settlement checks typically are drawn on FDIC-insured accounts or that Defendant provided Plaintiff with reason to expect that his surrender proceeds would be paid with a check written on such an account. Accordingly, Defendant is entitled to summary judgment as a matter of law on this claim.[4]

### *Breach of Contract: "Competitive" Interest Rate*

Plaintiff asserts a breach of contract claim premised on the Brochure's description of the interest rate that Plaintiff's funds in the Account would earn as "competitive." The Brochure represented that the interest rate paid on the Account would be a "competitive rate [that] will always equal or exceed the national average for bank money market deposit accounts, as measured by the Bank Rate Monitor National Index." (Angst Decl., Ex. 17D.) "New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary or preliminary." John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co., 717 F.2d 664, 669 n.8 (2d Cir. 1983). In the Brochure, the general adjective "competitive" was followed by the specific representation that the rate would equal or exceed an identifiable, readily ascertainable, benchmark. Plaintiff has not proffered any evidence that would enable a reasonable fact finder to conclude that the adjective "competitive" entailed a separate promise regarding the interest rate beyond the obligation to equal or exceed the BRMNI, and it is undisputed that at all relevant times Defendant performed this obligation.[5]

---

[4]  Moreover, Defendant paid Plaintiff the entire balance of his Account upon request and therefore any potential risk to which Plaintiff may have been exposed due to the creation of the Account never materialized.

[5]  The Surrender Request Form provided that the Account would earn a competitive rate of interest without either quantifying the interest rate or representing that it

Plaintiff argues that he believed that the Account was either insured by the FDIC or was subject to the regulations of the Investment Company Act of 1940, both of which are designed to protect investors. Yet Plaintiff has not proffered any evidence that Defendant ever made any such representation about the Account. Plaintiff also argues that, given that the Account did not benefit from either of the above-mentioned forms of federal government protection, in order for the Account's interest rate to be "competitive" it should have been similar to the rates received by Defendant's unsecured creditors, which at the relevant times allegedly exceeded 8.00%. (Bragar Decl., Ex. 4.) However, Plaintiff has not proffered any evidence to support a reasonable fact finder's conclusion that Defendant promised to pay interest on the Account at a rate similar to that paid to unsecured creditors. Rather, the Brochure identified bank money market accounts as the relevant comparative investments, and specified a particular benchmark. It is undisputed that the Account accrued interest at the rates specified in the Confirmation Certificate and the January 2005 Monthly Statement and those rates equalled or exceeded the BRMNI. Plaintiff has failed to raise any genuine issue as to the existence of a contract to pay anything other than a rate meeting or exceeding the BRMNI and Defendant is, accordingly, entitled as a matter of law to summary judgment dismissing this breach of contract

---

would always equal or exceed the BRMNI. However, Plaintiff does not argue that the Surrender Request Form, in isolation, supports contractual obligations from Defendant to Plaintiff regarding the interest rate, and for good reason: the point at which Plaintiff first could elect either to keep his funds in the Account or to write a check to himself and liquidate the Account occurred when Plaintiff received the Account Checkbook – which was sent to him along with the Brochure and the Confirmation Certificate. Therefore the representations about the interest rate contained in those documents form an integral part of the operative contract.

claim [6]

*Breach of Fiduciary Duty*

Plaintiff asserts that Defendant's placement into the Account of the monies owed to Plaintiff gave rise to a fiduciary duty that Defendant breached by failing to pay an interest rate consistent with the nature of the Account. The Second Circuit has described a fiduciary relationship as follows:

> A fiduciary relationship involves discretionary authority and dependency: One person depends on another – the fiduciary – to serve his interests. In relying on a fiduciary to act for his benefit, the beneficiary of the relation[ship] may entrust the fiduciary with custody over property of one sort or another. Because the fiduciary obtains access to this property to serve the ends of the fiduciary relationship, he becomes duty-bound not to appropriate the property for his own use.

United States v. Chestman, 947 F.2d 551, 569 (2d Cir. 1991). Although the relationship between an insurer and insured is generally not a fiduciary one, Freeman v. MBL Life Assurance Corp., 60 F. Supp. 2d 259, 266 (S.D.N.Y. 1999), New York courts have held that exercising investment discretion for another can be a fiduciary function, see Conway v. Icahn & Co., Inc., 16 F.3d 504, 510 (2d Cir. 1994), and the Court denied Defendant's motion to dismiss this claim to permit Plaintiff to further develop the record as to whether the facts specific to this case gave rise to such a duty.

It is undisputed that there was no fiduciary relationship between the parties before Plaintiff elected to surrender the Policies. Plaintiff has not proffered any evidence to support his claim that Defendant exercised investment discretion over Plaintiff's monies once it placed

---

[6] The Court has not relied on the expert report of Peter Tufano to adjudicate either this claim or any of Plaintiff's other claims and, therefore, need not consider Plaintiff's request to strike it.

Plaintiff's surrender proceeds in the Account.  Neither the Brochure nor the Surrender Request Form nor the Confirmation Certificate represented that Defendant would invest the monies in the Account for Plaintiff's benefit.  Rather, Defendant merely promised to hold the monies and pay a variable rate of interest (as defined above) until Plaintiff withdrew the monies by writing himself a check.  Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's fiduciary duty claim.  See Muller-Paisner v. TIAA, 289 Fed. App'x 461, 466 (2d Cir. 2008) (stating that under New York law, a fiduciary duty only arises in creditor-debtor or insurer-insured relationships in exceptional circumstances where there is a showing of trust or confidence reposed in the fiduciary).

*Violation of New York General Business Law § 349*

In order to establish a violation of Section 349 of New York's General Business Law, "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).  Plaintiff has not proffered any evidence that would enable a reasonable fact finder to conclude that Defendant engaged in practices that are misleading in a material way.  Rather, the undisputed evidence demonstrates that Defendant informed Plaintiff of his ability to access his funds immediately and the interest rate his funds would carry if he chose not to do so.  Accordingly, Defendant is entitled to summary judgment as a matter of law on this claim.

*Unjust Enrichment*

The elements of an unjust enrichment claim under New York law are that: (1) the defendant was enriched; (2) defendant's enrichment came at the expense of plaintiff; and (3) the

circumstances are such that, in equity and good conscience, defendant should make restitution. Compudyne Corp. v. Shane, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir.1983)).  In light of the Court's conclusion that Plaintiff has not proffered any evidence to support a reasonable fact finder's conclusion that Defendant breached any of its obligations to Plaintiff or engaged in deceptive business practices, there is no basis to conclude that equity and good conscience demand that Defendant make any restitution to Plaintiff.  Defendant's motion will therefore be granted as to Plaintiff's unjust enrichment claim.

*The Class Certification Motion*

Federal Rule of Civil Procedure 23 provides that a district court must rule on the issue of class certification "[a]t an early practicable time after a person sues or is sued as a class representative . . . "  Fed. R. Civ. P. 23(c)(1).  This provision affords district courts with flexibility when presented with both a dispositive motion and a motion for class certification. See Project Release v. Prevost, 722 F.2d 960, 963 (2d Cir. 1983); Wright v. Schock, 742 F.2d 541, 543-44 (9th Cir. 1984).  A court should consider whether an initial ruling on the merits of a claim would protect the parties from needless and costly further litigation and whether such a ruling would prejudice any of the parties.  Wright, 742 F.2d at 544.  A district court may reserve decision on a class certification motion pending disposition of a motion to dismiss, Benfield v. Mocatta Metals Corp., No. 91 Civ. 8255, 1993 WL 148978, at *2 (S.D.N.Y. May 5, 1993) (citing Christensen v. Kiewit-Murdock Investment Corp., 815 F.2d 206, 214 (2d. Cir. 1987)), or pending disposition of a motion for summary judgment, Encarnacion v. Astrue, 491 F. Supp. 2d 453, 459 (S.D.N.Y. 2007), aff'd, 568 F.3d 72 (2d Cir. 2009).  Having determined that Defendant is

entitled to summary judgment dismissing all of Plaintiff's claims, the Court will forego determination of the class certification motion.

## CONCLUSION

Defendant's motion for summary judgment is granted in its entirety. The Court will not address Plaintiff's motion for class certification. The Clerk of Court is respectfully requested to terminate docket entries 53, 62 and 87, enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
       November 10, 2009

LAURA TAYLOR SWAIN
United States District Judge